```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA
                       Alexandria Division

In re:                          )
    US AIRWAYS, INC. et al.,    )
                                )
    Reorganized Debtors.        )
                                )       1:06cv539
PHILIP A. GARLAND,              )
                                )
            Appellant,          )
                                )
    v.                          )
                                )       Case No. 04-13819-SSM
US AIRWAYS, INC.                )       Jointly Administered
                                )       Chapter 11
            Appellee.           )
```

**MEMORANDUM OPINION**

Before the Court is the appeal of Philip A. Garland ("Garland") of the decision of the United States bankruptcy court granting summary judgment in favor of US Airways, Inc. ("US Airways") on Garland's claim for $17 million, which was based on allegations of racial discrimination, retaliation, and harassment surrounding Garland's employment with and termination by US Airways as a pilot.

The bankruptcy court found that Garland's claims were barred as a matter of bankruptcy law and, in the alternative, barred by res judicata. The bankruptcy court further found no evidence supporting Garland's motion for sanctions. These findings were fully supported by the record and will not be disturbed. Accordingly, this Court will affirm the decision of the bankruptcy court.

I. Background and Procedural History

A. Garland's Litigation Against US Airways in 1986

US Airways hired Philip Garland as a pilot in 1984.[1] In April 1986, Garland filed a lawsuit against US Airways alleging racial discrimination in US Airways's hiring and recruitment practices. Garland v. US Air, Inc., 767 F. Supp. 715 (W.D. Pa. 1991). Following trial in 1991, the district court found that if not for certain discriminatory recruitment, interviewing, and hiring practices used in the early 1980s, Garland would have been hired in 1982. Accordingly, the court ordered US Airways to assign Garland retroactive seniority to November 13, 1982, and enjoined US Airways from further discriminatory conduct in its hiring and recruitment.

B. Garland's Promotion and Subsequent Termination

In 1999, Garland voluntarily bid for the opportunity to serve as a captain for a new aircraft type, the B757/767. He was awarded the bid based on his seniority, and completed his training for the B757/767 on October 27, 1999. The completion of this training enabled Garland to receive his Federal Aviation Administration ("FAA") type rating and airline transport ("ATP") license on the B757/767. Garland served as a reserve pilot on the new aircraft type, meaning he did not hold a regularly scheduled

---

[1] Garland flew primarily B737 and DC-9 aircraft, and during his employment, he was promoted to 737 Captain, a position he held until October 1999.

line of flying but was contacted for flights according to the needs of US Airways. Garland was required to return for his annual proficiency check ("PC") by the end of October 2000. On October 29, 2000, Garland took and failed the PC. Under the US Airways-Air Line Pilots Association ("ALPA") collective bargaining agreement, Garland was entitled to, and did receive, five hours of training in a flight simulator, followed by an opportunity to retake the PC. Garland failed his second PC on November 14, 2000. Following Garland's second failed PC, the FAA invoked its right under 49 U.S.C. § 44709 (2000) to require Garland to submit to an FAA examination, known as a "44709 check ride," to determine whether Garland should continue to hold his airline transport pilot license.

Under the collective bargaining agreement with ALPA, US Airways was required to provide Garland with five hours of additional training. However, at Garland's and ALPA's request, US Airways agreed to provide Garland with a full transition training course of 115 hours of additional training, normally given only to pilots with no experience flying the aircraft in question. Despite completing the training, on February 15, 2001, Garland took and failed the 44709 check ride.

After failing the 44709 check ride, Garland voluntarily surrendered his Airline Transport Pilot Certificate for the B757/767 Type Ratings to the FAA, in lieu of the FAA suspending

his certification. Once the certificates were surrendered to the FAA, Garland was not lawfully permitted to operate a commercial airline flight and US Airways was not permitted to use Garland as a pilot.[2]

Although not required to do so, the FAA agreed to provide Garland with a second 44709 check ride using a different examiner, and US Airways agreed to provide five hours of additional training. On March 7, 2001, Garland failed his second 44709 check ride.[3] The FAA would not return Garland's certificates or recommend him for further PCs. Because it could no longer use Garland as a pilot, US Airways permanently terminated his employment in December 2001, after an investigation of the termination decision.

C. Garland's Post-Termination Litigation

Garland unsuccessfully litigated his dismissal in the Western District of Pennsylvania, through an arbitration proceeding, and in US Airways's bankruptcy proceedings. After being fired by US Airways, Garland first filed a civil contempt complaint on December 4, 2001 in the district court for the Western District of Pennsylvania, arguing that US Airways's

---

[2] Because he surrendered his certificates, Garland was no longer legally permitted to fly any commercial flight, which precluded him from returning to his position as 737 Captain.

[3] The record is not clear as to what specifically caused Garland to fail his PCs or his 44709 check rides.

4

decision to fire him violated the injunction issued by that court in 1991. Although he sought to re-open the 1986 case, he named new defendants, including the two FAA inspectors who had conducted the 44709 check rides, without seeking leave to amend his original complaint.

Garland's termination was simultaneously litigated in an arbitration proceeding brought under the US Airways-ALPA collective bargaining agreement. The arbitration hearing was held before the ALPA System Board of Adjustment ("Board") July 16-17, 2002. At issue in the arbitration was whether US Airways was justified in terminating Garland. At the hearing, Garland was represented by ALPA counsel, who had the opportunity to present evidence, testimony, and arguments and to cross-examine witnesses. Post-hearing briefs and reply briefs were submitted, and the record was completed on October 22, 2002.

By an opinion issued on February 7, 2003, the arbitration was concluded when the Board upheld US Airways's termination of Garland as justified. Although it observed that the issue formally presented for arbitration was whether Garland's termination was justified as a contractual matter, the Board addressed Garland's discrimination claims, finding that there was "absolutely no support for such [discrimination and retaliation] allegations about the Company's treatment of the grievant." <u>US Airways, Inc. v. The Air Line Pilots Association International</u>,

DIS 01-05-03 (unpublished) (2003) (Krinsky, Arb.). As a contractual matter, the Board found the termination justified because Garland no longer held the ATP license required to work as an airline pilot after his certificates were surrendered to the FAA.

 While the arbitration was pending, in December 2002, the district court granted the FAA inspectors' motion to dismiss, and dismissed the remainder of Garland's civil contempt complaint <u>sua sponte</u> after finding that Garland's termination was already being adjudicated before the US Airways-ALPA System Board, the completion of which "would obviate the need for further litigation" ("the December 2002 order").

 In March 2003, Garland filed a motion for reconsideration of the December 2002 order, alleging that US Airways had engaged in fraud to obtain the arbitration award. This motion was denied.

 On May 7, 2003, Garland filed in the Western District of Pennsylvania a "Motion for Trial de Novo and Hearing Date," again under the caption from the 1986 case, requesting that the court vacate the arbitration decision and hear his contempt and civil rights claims "de novo." The court again dismissed the motion on grounds that it was an untimely filed motion for reconsideration of the December 2002 order. Garland appealed this decision and the decision to deny his March reconsideration motion to the United States Court of Appeals for the Third Circuit, which

affirmed the district court's decisions in all respects. Garland v. US Air Inc., et al., No. 03-2557 (3d Cir. Oct. 9, 2003).

In January 2004, Garland filed yet another pleading in the Western District of Pennsylvania again under the 1986 case caption, titled "Motion to Vacate and Set Aside Orders Upon Evidence of Fraud, Fraud Upon the Court, Collusion and Corruption Pursuant to FRCP 60(b); Motion for Contempt; Motion to Add New Claims and Parties and Scheduling Order." In this motion he alleged that both the December 2002 order and the February 2003 arbitration decision were procured by fraud. In July 2004, the district court once again dismissed Garland's motion as an untimely filed motion for reconsideration. Garland filed a second notice of appeal with the Third Circuit.[4]

D. US Airways's Chapter 11 Proceedings

US Airways, together with its parent holding company and several affiliates, filed a chapter 11 petition for reorganization in the bankruptcy court on August 11, 2002 while Garland's district court and arbitration proceedings were in

---

[4] On October 11, 2005, the Third Circuit issued an Order dismissing Garland's appeal because of US Airways's bankruptcy proceeding. Garland v. US Air, Inc., No. 04-3155 (3d Cir. Oct. 11, 2005).

On February 7, 2005, Garland filed a new Complaint in the Western District of Pennsylvania, which he was permitted to amend for a second time on November 28, 2005. One defendant named in the case, the arbitrator who presided over the arbitration decision, has been dismissed, but otherwise that case is still pending.

7

progress. On October 1, 2002, Garland filed a proof of claim (Claim No. 146) in that proceeding, seeking $17 million for alleged racial discrimination, retaliation, and harassment. Garland attached a copy of the complaint he had filed in the Western District of Pennsylvania in December 2001. US Airways objected to Garland's claim. Because of the pending arbitration and the litigation in the district court, Garland's proof of claim was continued every time it came up for hearing. On March 18, 2003, the plan was confirmed, under which allowable secured claims (except for a convenience class of small claims) would be satisfied by stock in the reorganized company, rather than by cash. The confirmation plan also included a discharge injunction of all claims filed as proofs of claim during the proceeding. Garland sought and was granted limited relief from that injunction to adjudicate his claims in the Western District of Pennsylvania.

In September 2004, US Airways filed its second bankruptcy petition. As a result, Garland's second notice of appeal to the Third Circuit was stayed. On February 1, 2005, Garland filed a proof of claim in the second bankruptcy proceeding (Claim No. 3007). This second proof of claim was identical to the proof of claim filed in the first bankruptcy proceeding, and again requested $17 million, although it gave a slightly different date for the alleged discrimination (two days' difference). US Airways

objected to this claim. Because US Airways's unresolved objections to claims filed in the first case, including Garland's claim, were transferred to the second bankruptcy proceeding, the bankruptcy court had two identical proofs of claim filed by Garland pending before it.

A reorganization plan in the second case was confirmed on July 28, 2005. A status hearing on Garland's second proof of claim was set for October 20, 2005, and continued to December 15, 2005, when oral argument of the claim was held.

On March 6, 2006, the bankruptcy court issued a Memorandum Opinion granting summary judgment in favor of US Airways. In analyzing Garland's two identical proofs of claim, the bankruptcy court concluded that the first claim (Claim No. 146), filed in the first bankruptcy case, must be disallowed as moot because confirmation of the plan of reorganization in the first bankruptcy case limited any recovery to a distribution of stock, and all rights to stock issued in the first bankruptcy case were cancelled by the confirmed plan in the second bankruptcy case. Garland's claim in the second bankruptcy case (Claim No. 3007), was disallowed because it was essentially identical to Claim No. 146, which had arisen before the first bankruptcy petition was filed and, therefore, was discharged in the first bankruptcy case. The court also concluded that even if Garland's claims had not been disallowed as moot and/or discharged, they were barred

by res judicata because the claims had been fully litigated before the US Airways-ALPA System Board, the Western District of Pennsylvania, and the Third Circuit Court of Appeals, and final judgment had been entered dismissing his discrimination and retaliation claims. Lastly, the bankruptcy court concluded that there was no evidence that US Airways's counsel had acted in an inappropriate manner, thus Garland's motion seeking sanctions against US Airways's counsel was denied.[5] Garland timely appealed this decision to this Court.

## II. Discussion

### A. Standard of Review

A bankruptcy court's findings of fact may only be set aside by a district court exercising appellate review if they are clearly erroneous. Fed. R. Bankr. P. 8013. A district court's review of legal conclusions and mixed questions of law and fact, however, is de novo. In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992).

Motions for summary judgment raise mixed questions of law and fact. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), Celotex Corp.

---

[5] The sanctions motion arose out of confusion over the date on which Garland's proof of claim would be argued. Garland alleged that US Airways's counsel deliberately misinformed him that the matter had been continued to cause his absence and thereby jeopardize his claim.

v. Catrett, 477 U.S. 317, 322-23 (1985). In ruling on a motion for summary judgment, a court should accept the evidence of the nonmovant, and all justifiable inferences must be drawn in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

B. *Res Judicata*

Garland's claims are clearly barred by res judicata. Under res judicata, or claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153 (1979); Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991). The doctrine of res judicata bars claims when there is (1) a final judgment on the merits in an earlier suit; (2) the cause of action in both the earlier and the later suit are identical; and (3) the parties or their privies in the two suits are identical. Pension Benefit Guar. Corp. v. Beverley, 404 F.3d 243, 248 (4th Cir. 2005); Meekins, 946 F.2d at 1057.

Garland's discrimination claims were fully litigated before the US Airways-ALPA System Board during the arbitration proceeding. In that proceeding, the Board specifically found no evidence to support allegations of discrimination or retaliation surrounding US Airways's decision to terminate Garland. Instead, it found that US Airways had fired Garland because he no longer held FAA pilot certification and therefore could not legally be employed as one.

The Western District of Pennsylvania upheld the Board's conclusions and denied Garland's motion to vacate the arbitration ruling or reconsider its own rulings. The district court also rejected Garland's allegations of fraud in the arbitration process. The Third Circuit's dismissal of Garland's appeals rendered the district court's judgment on the merits of his claim a final judgment. Because the claims Garland unsuccessfully pursued in the arbitration and district court proceedings and those pursued in the bankruptcy court are the same, and the parties are the same, the bankruptcy court's entry of summary judgment in favor of US Airways on the ground of res judicata was fully supported by the record, and correct as a matter of law.

C. Discrimination

Even if not barred by res judicata, Garland's claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (29 U.S.C. § 2000e-3(a)) would fail because they are without merit. Garland alleges that he was subjected to a racially hostile environment and was terminated due to race discrimination and retaliation for filing a racial discrimination lawsuit in 1986.

Garland fails to state a prima facie case of race discrimination or retaliation because it is uncontestable that he was not qualified for the position from which he was fired. To establish a prima facie case of discrimination, Garland must show

that (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. Bryant v. Bell Atl. Md., Inc., 288 F.3d 124 (4th Cir. 2002). Thus, a crucial element of the prima facie case is that the plaintiff must be qualified for the position in question. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

There is no question that Garland was not qualified for his position as a pilot: he could not lawfully fly a commercial airplane after he repeatedly failed proficiency tests and the FAA revoked his required license. US Airways was justified in terminating Garland at that point. Therefore, he fails to establish a prima facie case of discrimination.

Garland also failed to allege any facts sufficient to establish a hostile work environment. To state a claim of hostile environment, the hostility must be pervasive or severe enough "to alter the conditions of [the victim's] employment and create an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). A plaintiff cannot rely upon casual, isolated, or sporadic incidents to support a claim of hostile work environment. See Faragher v. City of Boca Raton, 524 U.S. 755, 788 (1998). Garland has alleged no facts such as harassing statements, conduct, or actions that would constitute racial

harassment. He therefore fails to state a claim for hostile work environment.

Garland has also provided no evidence of retaliation. Lacking any direct evidence of retaliation, in analyzing whether Garland has made a sufficient claim for retaliation, the McDonnell Douglas burden shifting framework is the appropriate test. Under that framework, Garland must first make a prima facie case by showing that (1) he engaged in a protected activity; (2) US Airways took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the asserted adverse action. Tinsey v. First Union Nat'l Bank, 155 F.3d 435, 443 (4th Cir. 1998). Specifically, if Garland is able to show that his 1986 discrimination lawsuit in 1986 triggered his termination in 2001, a prima facie case would be made and the burden would then shift to US Airways to articulate a legitimate, non-retaliatory reason for its action. If US Airways carries this burden, then to overcome summary judgment Garland must present some evidence that the company's proffered explanation is merely a pretext for retaliation.

Garland cannot establish the third element of the prima facie case, that is, causation, because the thirteen years between the protected activity (filing the discrimination lawsuit) and the adverse employment action is insufficient as a matter of law to establish causality. Tinsey, 155 F.3d at 443.

Moreover, even if Garland could establish a <u>prima</u> <u>facie</u> case of retaliation, he has not rebutted US Airways's legitimate, non-retaliatory reason for firing him; namely, that he was not legally certified to fly planes. Garland presents no evidence other than his own assertions that this decision was pretextual. In the Fourth Circuit, such declarations do not rebut a non-retaliatory explanation. <u>Goldberg v. Green and Co</u>., 836 F.2d 845, 848 (4th Cir. 1988).[6]

<u>D. Motion for Sanctions</u>

Garland filed a motion for sanctions against counsel for US Airways because of the miscommunication surrounding the schedule for hearing his claim. The bankruptcy court found that although there may have been some misunderstanding between counsel and Garland as to whether the claim objection <u>had</u> <u>been</u> or <u>was</u> <u>to</u> <u>be</u> continued, the outcome was the same in either event. Thus, no

---

[6] Garland has made other claims and noted several issues on appeal that are also without merit. These include a claim for defamation and assertions that his claims are not subject to discharge in bankruptcy because they are for "willful and malicious injury;" that the debtor has admitted it has insurance that would cover his claims; that it was error for the bankruptcy court to dismiss Garland's claim when no discovery had been conducted and no jury trial held; that a judicial lien was created by the 1991 decision in the Western District of Pennsylvania; that US Airways has engaged in a continuing violation of his civil rights and the bankruptcy court abused its discretion by disallowing his claims; and that his claims were adversely affected by the order closing the first bankruptcy and thus the bankruptcy court abused its discretion by later determining that his claims were disallowed. None of these claims are supported by the record in any way.

action was taken on his claim at the October 20 hearing and there was no evidence that counsel acted inappropriately. The bankruptcy court denied Garland's motion for sanctions. This decision will not be disturbed.

### III. Conclusion

For the reasons stated above, the decision of the bankruptcy court will be AFFIRMED.

A separate order consistent with this opinion will be entered.

Entered this 13th day of October, 2006.

                                                  /s/
                                  _____
                                  Leonie M. Brinkema
                                  United States District Judge

Alexandria, Virginia